```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      CENTRAL DIVISION at LEXINGTON


UNITED STATES OF AMERICA,      )
                               )
     Plaintiff,                )
                               )    Criminal Case No.
v.                             )       12-cr-65-JMH
                               )
PETRICA OCTAVIAN STOIAN,       )
SABRINA CARMICHAEL, ELI        )
HOLLEY, BROOKS SOWELL, APRIL   )    MEMORANDUM OPINION AND ORDER
ABRAMS, and NATHANIEL GARNER,  )
                               )
     Defendants.               )
```

                                 ***

This matter is before the Court with respect to restitution as to Defendants Petrica Octavian Stoian, Sabrina Carmichael, Eli Holley, Brooks Sowell, April Abrams, and Nathaniel Garner. The Court has had the benefit of the United States' Memorandum on Restitution [DE 691], the responses of Nathaniel Garner [DE 698], Abrams [DE 705], Stoian [DE 706], Sowell [DE 707], Carmichael [DE 716], as well as the presentation of evidence by the United States and argument by counsel for the United States and attorneys for Defendants Eli Holley and April Abrams during the hearing conducted on April 7, 2015 [DE 727, 728]. Defendants Stoian [DE 718], Carmichael [DE 697], Sowell [DE 707], and Nathaniel Garner [DE 699, 701] and their respective

counsel waived their right to appear at that hearing. Defendant April Abrams waived her right to appear at the hearing [DE 686] and appeared by and through counsel. Defendant Eli Holley appeared by and with counsel. At the conclusion of the hearing, the Court announced its decision with respect to restitution in this matter. The Court memorializes some aspects of that decision in this Memorandum Opinion, as set forth below.

The Mandatory Victims Restitution Act (MVRA) requires district courts to award restitution to identifiable victims of fraud. 18 U.S.C. §§ 3663A(a)(1), 3663A(c)(1)(A)(ii). A "victim," for purposes of the MRVA, is defined as any "person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's conduct in the course of the scheme, conspiracy, or pattern." *Id*. at § 3663A(a)(2). For purposes of restitution liability, "co-conspirators are held jointly and severally liable for all foreseeable losses within the scope of their conspiracy regardless of whether a specific loss is attributable to a particular conspirator." *United States v. Moeser*, 758 F.3d 793, 797 (7th Cir. 2014) (*citing United States v. Berkowitz*, 732 F.3d 850, 853 (7th Cir. 2013); *United States v. Dokich*, 614 F.3d 314, 318 (7th Cir.2010); *United States v. Martin*, 195 F.3d 961,

968-69 (7th Cir.1999)). Accordingly, the United States need not "prove 'a direct causal relationship between the defendant's personal conduct and a victim's loss,' because 'the MVRA imposes joint liability on all defendants for loss caused by others participating in the scheme.'" *Id*. (citing *Dokich*, 614 F.3d at 318 (emphasis added)). Still, in a multi-defendant case where joint and several liability is applicable, the government is required to establish, by a preponderance of the evidence, a causal connection between the victims loss and the fraudulent scheme. *See United States v. Martin*, 195 F.3d 961, 969 (7th Cir. 1999).

In its decision on the issue of the amount of loss attributable to each defendant in this matter for the purposes of properly calculating the sentencing guidelines [DE 558], this Court reached a conclusion with respect to the amount of time, demonstrated by a preponderance of the evidence, that each defendant was part of the conspiracy charged in this matter. For the purposes of restitution, the United States has asked that the Court impose joint and several liability on each of the defendants in the amount of actual loss suffered by individuals who were victimized by the scheme during the defendants' individual periods of involvement in the scheme. In light of the case law and the Court's earlier decisions, the Court concludes that this is an appropriate attribution of loss for

purposes of restitution in light of the conspiracy conducted by the defendants and others. In reaching this conclusion, the Court rejects April Abrams' argument that her relative culpability supports a decision to apportion liability rather than to have the defendants share it jointly and severally. The Court is not persuaded that her involvement was of such a limited nature as to warrant an apportionment of less than what the Court sees as her fair share of the loss when shared jointly and severally with her co-conspirators. Thus, Defendants Stoian, Carmichael, Holley, Sowell, Abrams, and Nathaniel Garner will be held jointly and severally liable for all foreseeable losses within the scope of the conspiracy during the course of their involvement regardless of whether a specific loss is attributable to the particular defendant being held responsible for restitution – so long as the loss was caused by others participating in the conspiracy.

During the restitution hearing, the United States introduced a spreadsheet which United States Secret Service Special Agent Allen Lowe testified to be a list that he compiled from information that he had obtained from the course of the investigation of this matter and which identified each individual victim of the conspiracy known to him and the amount of loss suffered by each those victims. The United States also introduced individual spreadsheets for Defendants Stoian,

Carmichael, Holley, Sowell, and Abrams, which Agent Lowe testified to be lists of the same information as contained in the larger spreadsheet but limited to those victims who suffered loss during the period of each defendant's involvement as previously determined by the Court.[1]

The Court also heard testimony from Agent Lowe during the restitution hearing, which piggybacked onto his earlier testimony during the hearing on the amount of loss and the sentencing hearings in this matter, in which he described how a black notebook or ledger was seized from the car in which Defendants Nicholas Corey Garner and Eli Holley were arrested in September 2011. That ledger was entered into evidence in this matter during the loss hearing. Lowe explained and the Court has observed itself that the ledger contains what appear to be lists of transactions. Using that information, investigators sent subpoenas to Western Union and Money Gram for information connected to the notations found in that ledger which, as it turns out, corresponded to actual transactions conducted via Western Union and MoneyGram and received by members of the Garner group in the course of their conspiracy. Lowe has also testified before this Court, during other proceedings, that he contacted as many of the individuals who sent money in those

---

[1] The United States did not introduce a spreadsheet for Nathaniel Garner because no victims claimed losses during the period of his involvement.

transactions as he could (over 250 individuals) and that each told him that he or she had been defrauded of funds sent for the purchase of a vehicle advertised at one of many online sites which was never delivered to them. Agent Lowe has also testified that some of the information that he gathered about these victims and the amount of loss incurred as a result of those transactions was obtained from records provided by the victims themselves – victim impact statements, declarations of victim loss, other types of statements, receipts, and the like. Those victims and losses are reflected in those entries in the spreadsheet designated "WU" or "MG".

Other transactions attributable to the conspiracy were discovered through other means during the investigation, and Lowe has indicated them as "BVL," meaning that the transaction in question was a bank wire transfer from an individual victim for the purchase of vehicle into an account established by someone within the conspiracy group, or "LMPD," meaning that the information concerning these victims was provided to him by the investigator from the Louisville Metro Police Department who was investigating internet fraud activities in that geographic area. Again, Lowe indicated during his testimony and notations on his spreadsheet that in some instances he also relied on additional supporting documents to establish the identities of these victims and their amounts of loss – declarations of victim loss,

victim impact statements, or other materials, like receipts – suffered as a result of the activities of the conspiracy.[2]

At the restitution hearing and in their briefs, Defendants Abrams and Holley objected to the sufficiency of the evidence presented by the United States on two grounds, arguing that the United States had failed to meet its burden of demonstrating that restitution was due by a preponderance of the evidence. In the first instance, they objected on the grounds that Agent Lowe's testimony failed to establish evidence connecting the losses of these individual – who the United States urges are victims – to the acts undertaken by the conspiracy. They have objected, as well, to the presentation of evidence by Agent Lowe as insufficient, without more support from the discovery materials provided to them, to support the position of the United States on restitution. As a practical matter, the Court considers these objections in light of three natural groupings of evidence identified by the United States: those transactions which were recorded in the ledger discovered in the car at the time of Nicholas Corey Garner and Eli Holley's arrest (WU/MG); those related to victims who sent money via the wires to bank accounts set up by the co-conspirators (BLV); and that related

---

[2] Agent Lowe testified that in those instances where money has been returned to the victims to cover their loss from a source, he has entered a "zero" in the chart to reflect the absence of restitution available to that victim. He also omitted any claims for mental anguish or pain and suffering communicated by the victims.

to those transactions investigated or discovered through the investigation conducted by the Louisville Metro Police Department (LMPD).

With respect to the first objection, the Court has already accepted that the transactions recorded in the ledger (WU/MG) or received by bank wire (BLV) are evidence of intended or actual loss for the purposes of calculating the sentencing guidelines. Now, the Court sees that collection of ledger notations, from which investigators were able to craft subpoenas and recover information from Western Union and Moneygram as to the true identity of the payors listed in that ledger and their amount of loss, as evidence of actual loss which impacted real, identifiable people, directly and proximately harmed by the fraudulent activities conducted by the conspirators. The same is true for the evidence concerning the bank wires and information gained related to those individuals who wired money into those accounts but never received the item they sought to purchase. The Court considers this evidence sufficient for its purposes in the restitution inquiry. The evidence presented makes it more likely than not that the victims' losses as identified by Agent Lowe were caused by acts undertaken in the course of the conspiracy by indicted (and now convicted) and unindicted co-conspirators.

As for those transactions investigated by the LMPD, Agent Lowe testified that his contact in that agency, Detective Maroni, advised him that he had learned through the course of his investigation that the named individuals were each the victim of an Internet scam which was conducted in the same way as that conducted by the co-conspirators in the instant matter. The individuals sent money in amounts similar to the those transactions recorded in the ledger, ranging from around $2,500 to around $3,500, for the purchase of a vehicle advertised on a sales websites and never received a vehicle in return. Some of those individuals received emails indicating that the vehicle "for sale" had belonged to the "sellers'" son who had died following a car accident and that the "seller" wished to get rid of the vehicle because of the sad memories associated with it. The Court recalls evidence from the loss hearing which revealed that files or emails containing that narrative were found on computers in the possession of and used by some of the co-conspirators in this matter, namely Stoian. Further, as Agent Lowe explained, the funds from each of these individuals were sent to the Louisville area in the same time frame as the co-conspirators in this matter were operating in the area, receiving funds from other locations. Some of the data from the fraud investigation in Louisville revealed the perpetrators utilized a fake driver's license from either Maryland or New

York consistent with a common practice elsewhere in the conspiracy.

Agent Lowe also testified that Detective Maroni was, at that time, the only investigator at LMPD assigned to track and investigate internet-based crimes and that Detective Maroni had informed him that the Garner group was the only group of which he was aware which was conducting fraudulent activities of this sort in the area. The Court considers all of this evidence sufficient for its purposes in the restitution inquiry. The evidence presented makes it more likely than not that the victims' losses as identified by Agent Lowe were caused by acts undertaken in the course of the conspiracy by indicted (and now convicted) and unindicted co-conspirators.

Further, the Court reached the conclusion that Agent Lowe's testimony is sufficient to establish the victims' identities and losses by a preponderance of the evidence over Holley and Abrams' second objection, which went to the quality of his testimony. Holley summed up this argument by objecting to Agent Lowe's testimony on the grounds that it was, for the most part, "quadruple hearsay." The Federal Rules of Evidence – including those which limit the introduction of hearsay evidence – do not, however, apply at sentencing, and restitution is part of sentencing. Fed. R. Civ. P. 1101(d)(3), 18 U.S.C. § 3663A(a)(1) ("when sentencing a defendant . . . the court shall order . . .

that the defendant make restitution to the victim of the offense"). Plaintiff was free to undermine the reliability of the evidence received through Agent Lowe's testimony by cross-examination or by presenting additional evidence, but the Court was not required at this stage in the proceeding to conclude that it was unreliable merely because portions of Agent Lowe's testimony were hearsay.

At the hearing, Abrams' counsel also argued that, if the Court accepted Agent Lowe's statements concerning the identity and losses of the victims as sufficient proof without requiring him to present the individual pieces of evidence upon which he relied in reaching each of those conclusions for each victim, it would impermissibly shift the burden of proof from the prosecution to the defendants. He argued that, as the United States' presented the case for restitution, the defendants were then required to dig through a substantial amount of discovery material provided in advance of the hearing to determine what evidence supported Lowe's testimony so that they could either accept or refute it.[3] Abrams came dangerously close to suggesting that Agent Lowe's testimony was not evidence at all

---

[3] During Abrams' cross-examination of Agent Lowe, the witness testified that he had identified or was willing to identify the resources upon which he relied for his testimony during conversations that took place with defense counsel before the hearing and after the discovery was provided to counsel for the defendants. This is irrelevant to the inquiry into whether the United States presented testimony upon which this Court may rely in reaching its conclusion with respect to restitution.

and that the Court could not rely upon it, which is simply not the case. The Court, counsel, and defendants have already heard Agent Lowe's recitation of the provenance of the ledger and how he and his team of investigators recovered and dissected the information within the ledger to obtain the information tied to hundreds of Western Union and MoneyGram transactions. The Court, counsel, and defendants have also heard Agent Lowe's recitation of how he and his team of investigators identified and investigated the bank accounts known to have been used by the group to receive funds domestically then transfer them abroad.

The Court, counsel, and defendants now have the benefit of Agent Lowe's testimony with respect to the individual victims' identities and amounts of loss discovered through their investigatory efforts into those transactions. Defendants have had the opportunity to cross-examine agent Lowe on these matters and, had they wished to do so, to call other witnesses to testify about the matter. The same can be said for the materials, victims, and losses discovered by the Louisville Metro Police Department. Had Abrams or any other defendant involved in the proceeding wished to challenge the quality of Agent Lowe's testimony and the conclusions drawn by Agent Lowe from the information that he received from Detective Maroni about the connection between the victims identified by Maroni

and the attribution of their losses to the conspiracy at bar, they might have done so during cross-examination. Alternatively, they might have called Detective Maroni or anyone else with relevant information, although Abrams' counsel did not ask to do so.  In the absence of some sort of challenge, the Court presumes that Agent Maroni would have said on the witness stand precisely what Agent Lowe reported that Maroni said to him, and the Court concludes that it is an adequate set of facts from which to conclude that the victims and losses identified by Agent Maroni were tied to the conspiracy at bar.

Accordingly, for all of the reasons stated during the hearing and in this Memorandum Opinion and Order, the Court concludes that the United States has borne the burden of demonstrating by a preponderance of the evidence that restitution is owed to those individuals identified by Agent Lowe and listed in the spreadsheets.  From the evidence presented, the Court concludes that each of those individuals is a person directly and proximately harmed by a co-conspirator's conduct in the course of the scheme, conspiracy, or pattern charged in this matter and that each of the defendants should be held jointly and severally liable for all foreseeable losses within the scope of their involvement in the conspiracy regardless of whether each individual's specific loss is

attributable to the particular conspirator being held liable. *See* 18 U.S.C. § 3663A(a)(2).

Restitution will be ordered, jointly and severally, in the amount of $69,539.00 for Defendant Petrica Octavian Stoian; $1,807,517.06 for Defendant Sabrina Carmichael; $1,807,517.06 for Defendant Eli Holley; $1,651,745.07 for Defendant Brooks Sowell; and $62,287.00 for Defendant April Abrams. No restitution will be ordered as to Defendant Nathaniel Garner.

**IT IS SO ORDERED** this the 10th day of April, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge